UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| SAWYER S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:20-cv-00277-RLY-MPB |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

Plaintiff Sawyer S. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner" of his applications for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d), 1383(c)(3). On October 8, 2021, United States District Judge Richard L. Young entered an Order referring this matter to the Undersigned for a report and recommendation regarding the appropriate disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket No. 26). For the reasons set forth below, it is recommended that the Commissioner's decision denying the Plaintiff benefits be **REVERSED** and **REMANDED** for further proceedings.

I.     PROCEDURAL BACKGROUND

In October 2018, Sawyer S. filed his application for DIB and SSI benefits. (Docket No. 15-2 at ECF p. 16; Docket No. 15-5 at ECF pp. 2-4). Sawyer S. alleged cancer (left lung pneumectomy) thymic carcinoma, depression, anxiety, panic disorder, and asthma. (Docket No. 15-6 at ECF p. 7). The Social Security Administration ("SSA") denied his claims initially on February 18, 2019, (Docket No. 15-4 at ECF pp. 2-9) and on reconsideration on April 15, 2019

(Docket No. 15-4 at ECF pp. 15-28). On May 29, 2019, Sawyer S. filed a request for a hearing, which was granted. (Docket No. 15-4 at ECF p. 29-65).

On December 12, 2019, Administrative Law Judge ("ALJ") Kevin Martin conducted a hearing, where Sawyer S. appeared in person and represented by counsel. (Docket No. 15-2 at ECF p. 38). Vocational Expert James Bordieri was also present in person. (*Id.*). On January 23, 2020, ALJ Martin issued an unfavorable decision finding Sawyer S. was not disabled. (Docket No. 15-2 at ECF pp. 16-29). Sawyer S. appealed the ALJ's decision and, on October 7, 2020, the Appeals Council denied Sawyer S.'s request for review, making the ALJ's decision final. (Docket No. 15-2 at ECF pp. 2-4). On December 10, 2020, Sawyer S. filed this action, which seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.     STANDARD FOR PROVING DISABILITY

Under the Social Security Act, a claimant may be entitled to benefits only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At

step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. § Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments in the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1620(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

### III. STANDARD OF REVIEW OF THE ALJ'S DECISION

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he has made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

### IV. BACKGROUND

#### A. Factual Background

Sawyer S. was twenty three years older on his alleged onset date. (Docket No. 15-2 at ECF p. 28). He has a limited education and his past relevant work is a maintenance mechanic. (*Id.*).

#### B. ALJ Decision

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and 20 C.F.R. § 416.920(a) and ultimately concluded that Sawyer S. was not disabled. (Docket No. 15-2 at ECF p. 28). At Step One, the ALJ found that Sawyer S. met the

insured status requirements of the Act through December 31, 2021, and had not engaged in substantial gainful activity since November 6, 2016, the alleged onset date. (Docket No. 15-2 at ECF p. 18). However, the ALJ also noted that Sawyer S. had a prior unfavorable decision issued on August 29, 2018, and that there were not sufficient grounds to reopen this prior decision. (*Id.* at ECF p. 16). Therefore, the relevant time period began August 30, 2018. (*Id.*).

At Step Two, the ALJ found that Sawyer S. suffered from the following severe impairments: thymic carcinoma status-post total left pneumonectomy (left lung removal), asthma, and chronic seasonal allergic rhinitis, obesity, and status-post left knee arthroscopy for meniscus tear. (Docket No. 15-2 at ECF p. 19). At Step Three, the ALJ found that Sawyer S.'s impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926 (*Id.* at ECF pp. 20-23).

After Step Three but before Step Four, the ALJ found that Sawyer S. had the residual functional capacity ("RFC") to perform light work, except that he:

> [C]an occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He needs to avoid concentrated exposure to extreme cold, extreme heat, humidity, and other respiratory irritants, such as fumes, odors, dusts, gases, and areas of poor ventilation.

(Docket No. 15-2 at ECF p. 23).

At Step Four, the ALJ concluded that Sawyer S. was not able to perform any past relevant work. (Docket No. 15-2 at ECF p. 28). At Step Five, the ALJ, relying on the vocational expert's testimony, found Sawyer S., a younger individual with limited education, was capable of performing jobs that exist in significant numbers in the national economy, including an

assembler, hand packer, and inspector. (Docket No. 15-2 at ECF pp. 28-29). The ALJ concluded that Kenneth was not disabled. (*Id.* at ECF p. 29).

## V.  DISCUSSION

Sawyer S. makes two arguments. First he argues that the ALJ committed reversible error by refusing to obtain additional testing recommended by an examining physician and by relying on outdated opinions from non-examining physicians without adequately supporting his dismissal of a treating source opinion. Second, he argues that the ALJ erred in his subjective symptom analysis.

### 1. Medical Opinions

Sawyer S. argues that the ALJ committed reversible error by failing to properly evaluate opinion evidence or to even seek needed clarification. (Docket No. 25 at ECF p. 10). This argument has two parts. First, he argues that the ALJ rejected Sawyer S.'s repeated requests to obtain diffusion capacity testing that had been recommended by an examining physician in an interpretive document that, he argues, had not been adequately reviewed by agency physicians. (*Id.* at ECF pp. 10-11). Second, the ALJ dismissed a fairly recent treating source opinion, favoring the older opinions of the non-examining state-agency physicians, on grounds that could have also been resolved by seeking minimal clarification from the treating provider. (*Id.*).

The Commissioner argues that the ALJ was not required to order additional pulmonary testing given that the agency's regulations are permissive, not compulsory, when it comes to ordering additional examinations or tests and, here, the ALJ gave sound reasons for denying plaintiff's request for additional testing. Second, the Commissioner argues that the ALJ properly relied on the findings of the state-agency physicians and, at least, the state-agency physician at the reconsideration level considered Exhibit B8F, the exhibit that included the recommendation

6

to obtain diffusion capacity testing. Finally, the Commissioner argues that the ALJ properly assessed Dr. Richardson's opinions.

### A. Additional Pulmonary Testing

Sawyer S. underwent a pulmonary function test on February 13, 2019, in conjunction with a consultative examination, which showed mild obstructive pulmonary impairment with a severe functional impairment reflected by the reduction in FEV1 and significant improvement with bronchodilator therapy. (Docket No. 15-7 at ECF p. 295) ("Exhibit B6F"). Not included was an interpretation summary of the testing by internist Dr. Frank Hopkins, which was later collected with other Memorial Hospital records. (Docket No. 15-7 at ECF p. 344) ("Exhibit B8F"). This report interpreted the results to reflect a marked reduction in FVC and FEVI scores with an FEV1/FVC ratio greater than 70% that suggested severe restrictive lung disease. "However," Dr. Hopkins added, "this would require full pulmonary testing to include the total lung capacity for a more accurate determination of the severity of the restrictive lung disease." (*Id.*). Dr. Hopkins recommended complete pulmonary function studies with diffusion capacity to help further delineate the severity of the restrictive and obstructive lung defects seen. (*Id.*)

In Sawyer S.'s counsel's opening statement at the hearing, he noted that the consultative examination pulmonary function study did not include everything related to that study, and a fuller version of the report, which was later submitted, suggested severe restrictive lung disease and recommended diffusion capacity testing. (Docket No. 15-2 at ECF pp. 40-41). Counsel requested additional diffusion capacity testing to determine if a listed pulmonary impairment was, in fact, met. (*Id.*) ("[N]oting that both [FVC and FEV1] are greater than 70 percent less than their predicted value, 'that suggests severe restrictive long disease and [Dr. Hopkins recommends] diffusion capacity testing. And, I would note that the diffusion capacity testing is

another possible way to meet the listing."). The ALJ took the ordering of any additional tests under advisement. (*Id.* at ECF p. 42).

The ALJ's decision makes two nearly identical references to Sawyer S.'s request for additional pulmonary function testing within his Step three analysis. In discussing why Sawyer S. did not meet or equal section 3.02 of the Listing of Impairments, the ALJ commented:

> At the hearing, the claimant's representative requested further pulmonary function testing. The undersigned takes this request under advisement, and denies the request. The evidence as a whole is sufficient to make a determination regarding disability without obtaining additional evidence. (*See* 20 C.F.R. 404.1519a(b) and 416.919a(b)) The claimant's represented requested additional testing be ordered based upon Exhibit B8F, page 40, with the recommendation of the claimant undergoing complete pulmonary function studies with diffusion capacity to help further delineate the severity of the restrictive and obstructive lung deficits in the claimant. As the representative points out, this report was generated in the context of the pulmonary function testing ordered by DDS, but that page is not in the Exhibit at B6F. However, the State agency reviewing medical consultants had the report at Exhibit B6F, and at reconsideration, had Exhibit B8F to review, and concluded the severity of the claimant's respiratory impairments did not meet or equal the requirements of a Listing. Moreover, that conclusion is consistent with the prior ALJ Unfavorable decision (Ex. B9A), and evidence in that regard, including pulmonary function testing and State agency reviewing consultant findings. There is no indication that the claimant's lung functioning has deteriorated since that time. Additionally, the claimant's treatment records do not suggest the severity of his respiratory impairments are severe enough to indicate that further testing would support a conclusion that the requirements of a listing would be satisfied.

(Docket No. 15-2 at ECF pp. 21-22). The ALJ made similar comments in discussing why Sawyer S. did not meet or equal section 3.03 of the Listing of Impairments. (*Id.* at ECF p. 22).

The state-agency physicians did not discuss the pulmonary function report or Dr. Hopkin's recommendation for further testing. The only mention of the report at all was in the findings of fact on initial consideration:

> CE RATIONALE: PFS NEEDED TO FULLY ASSESS SOB SEVERITY. 2/13/19 ddb pfs results post bronchodilator: 2.11, 2.16, 2.19.

(Docket No. 15-3 at ECF p. 18).

An ALJ has an independent duty to develop the record fully and fairly. *See* 20 C.F.R. 404.1512(b); 20 C.F.R. § 416.912(b); *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). This duty is not eliminated when a claimant has counsel. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). *But see Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("This duty is enhanced when a claimant appears without counsel. . . ."). An ALJ "must order supplemental testing when the gap in the medical record is significant and prejudicial." *Warren v. Colvin*, 565 Fed. Appx. 540, 544 (7th Cir. 2014) (citing *Nelms*, 553 F.3d at 1098).

Sawyer S. argues that there is no indication that the state-agency physicians saw or considered the full pulmonary function test report, including Dr. Hopkins's recommendation for a complete pulmonary function study with diffusion capacity to help delineate the severity of the restrictive and obstructive defects. (Docket No. 25 at ECF p. 14). However, it appears at least one of the state-agency physicians reviewed the recommendation for additional testing. As the ALJ noted (Docket No. 15-2 at ECF p. 21), while the first state-agency physician at the initial level reviewed only Exhibit B6F (the exhibit without the recommendation page), the physician at the reconsideration level considered Exhibit B8F (the exhibit that included the recommendation page) (*compare* Docket No. 15-3 at ECF p. 30 (noting that records from Memorial Hospital had been received on April 4, 2019) *with* Docket No. 15-7 at ECF pp. 305-362 (Exhibit BF8, containing records from that hospital). The reconsideration-stage state-agency physician cited records from that exhibit in his analysis. (*see* Docket No. 15-3 at ECF p. 34 (top of page, discussing "Memorial Hospital Records")).

9

The Court agrees with the Commissioner and the ALJ that the reconsideration-stage state-agency physician's likely reviewed the recommendation page, which does make this analysis a closer call, but it does not obviate the ALJ's independent duty to develop the record. The ALJ did not satisfy his duty. The prior unfavorable decision from August 2018 considered a January 2016 pulmonary function test with an FEV1 of 2.82 and an FVC of 3.61 pre-bronchodilator. (Docket No. 15-3 at ECF p. 65). Records in this current claim included November 2017 pre-bronchodilator scores including an FEV1 of 1.98 (increased to 2.25 post-bronchodilator) and an FVC of 2.74 (increased to 2.80 post-bronchodilator), as well as the February 2019 results with lower values, except for an improved post-bronchodilator response shown with FVC. (Docket No. 15-7 at ECF pp. 45-47). This contradicts the ALJ's conclusion that there was no indication of deteriorating lung functioning in the record or when compared against the prior ALJ Unfavorable decision. The ALJ's interpretation of these records is further suspect when applied to the diffusion capacity testing and request for additional testing itself. The prior decision stated that the January 2016 testing did not "show chronic impairment of gas exchange or significantly abnormal arterial blood gas values." (Docket No. 15-3 at ECF p. 65). Yet diffusing capacity on November 2017 testing was only 64% of predicted (Docket No. 15-7 at ECF pp. 45-47), and the relevant physician recommendation for diffusion capacity testing was based on the results of the February 2019 test. (Docket No. 15-7 at ECF p. 344). DLCO[1] tests measure gas diffusion in the lungs. Listing 3.00(D)(4). Diffusion refers to gas exchange. Listing 3.00(A)(1). Therefore, the record shows a lack of chronic impairment of gas exchange in 2016 with decreased diffusion capacity in 2017, combined with a recommendation for diffusion testing in 2019. This contradicts the ALJ's rationale that "[t]here is no indication that the

---

[1] DLCO means diffusing capacity of the lungs for carbon monoxide. Listing 3.00(C)(9).

claimant's lung functioning has deteriorated since [the prior ALJ Unfavorable decision]." (Docket No. 15-2 at ECF p. 21).

Additionally, after all state-agency physician reviews, an October 2019 CT scan of Sawyer S.'s chest showed mild right lung emphysema (Docket No. 15-9 at ECF p. 10), in contrast to an April 2019 scan that only showed questionable developing emphysema. (Docket No. 15-9 at ECF p. 28). The Listing further provides that a DLCO may be severely reduced in some disorders, including COPD (particularly emphysema), "even when the results of spirometry are not significantly reduced." Listing 3.00(F). While the Commissioner is correct that a CT scan showing mild emphysema does not speak about the severity of Sawyer S.'s impairment, the comparison of the October 2019 scan against the April 2019 scan contradicts the ALJ's conclusion that Sawyer S.'s lung functioning had not deteriorated since that time.

This case can be distinguished from the Seventh Circuit's decision in *Thomas v. Colvin*, where the Court did reverse and remand for further proceedings, but also noted that the ALJ was not required to order a pulmonary function test. 745 F.3d at 807. There, the Court held "it is not clear what the pulmonary function test would have added to the record. Although it is clear that Thomas suffered from some pulmonary disorders, it is not obvious that the existing medical evidence of those disorders was so scant that the ALJ should have ordered additional testing to determine their severity." Thomas, 745 F.3d at 807-08. In contrast, here the examining physician who interpreted the pulmonary function test specifically recommended diffusion testing, within a larger context of worsening in recorded pulmonary function values between 2016 and 2019 and imaging results demonstrating the development of emphysema. Given this record, the ALJ needed further testing to fairly assess Sawyer S.'s restrictive and obstructive lung defects.

11

B.  **Evaluation of State-Agency Physicians and the Treating Source Opinion**

Having found remand necessary, the Court will provide a brief discussion on the remaining issues. The first, the ALJ's evaluation of the state-agency physicians, is highly intertwined with the discussion regarding the need for additional testing. The ALJ found the state-agency physical assessments "persuasive." (Docket No. 15-2 at ECF p. 26). In full, the ALJ reasoned:

> Fernando Montoya, MD found that the claimant could perform light work; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. J. Sands, MD affirmed this finding. These findings are consistent with and supported by the evidence of record showing mostly mild to occasionally moderate physical examination findings, including a successful knee arthroscopy and diminished breath sounds in his lung.

(*Id.*).

For claims filed after March 27, 2017, as is the case here, the Social Security Administration provides that its adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. §§ 404.1520c and 416.920c. "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. The agency's regulations require an ALJ to consider any medical opinions provided by a medical source using several factors, including supportability, consistency, relationship with the claimant, and specialization. 20 C.F.R. §§ 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5). The most important factors considered when determining the persuasiveness of a medical source opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2). Therefore, an ALJ must "explain how [they] considered the supportability and consistency factors for a

medical source's opinions . . . in [the claimant's] determination or decision." *Id.* An ALJ may explain how they considered the other factors, but this is not required. *Id.*

An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny).

Here, the last state-agency physician provided his opinion on April 15, 2019. (Docket No. 15-3 at ECF pp. 37-38). As explained, later CT imaging suggested worsening of Sawyer S.'s condition with the development of emphysema over the course of 2019 in Sawyer S.'s one, already-impaired lung. (Docket No. 15-9 at ECF p. 10). As lay individuals it is difficult for the ALJ, counsel, and this Court to identify the significance of "questionable developing emphysema" and "mild emphysema," particularly in an individual with only one lung that has other medically determinable impairments associated with that lung. This worsening, combined with the lack of additional testing to develop the record, calls into question the ALJ's reasoning for finding the state-agency physician's opinions "persuasive."

Sawyer S. further argues that the ALJ's rationale considering the treating physician's opinion was flawed in several ways, with his primary error basing so much of his evaluation on how the treater's opinion "seemed" to be based on subjective complaints. Moreover, Sawyer S. argues, the ALJ overemphasized issues in which he disagreed over the interpretation with the treating source, without acknowledging how closely the treating source's opinion aligned with the non-examining opinions that the ALJ found persuasive. (Docket No. 25 at ECF p. 19).

The ALJ gave the following analysis with respect to Sawyer S.'s treating physician, Dr. Richardson:

> Jennifer Richardson, MD wrote a letter on January 17, 2018. (Ex. B4F) The undersigned notes this letter was written before August 30, 2018. She stated that the claimant gets short of breath easily since his surgery, and " . . .it is hard for him to have any type of strenuous work." She said that the claimant ". . .has trouble with high stress jobs," has tried to keep meaningful work, but has had difficulty, and has not been able to find work ". . .that would be able to support himself and his family." The undersigned does not find this opinion persuasive, as Dr. Richardson seems to give limitations based upon the claimant's subjective complaints rather than the objective evidence of record. Moreover, Dr. Richardson does not give a function-by-function assessment of the claimant's abilities.
>
> Dr. Richardson also filled out a physical residual functional capacity questionnaire on October 7, 2019. (Ex. B21F) She stated that the claimant had shortness of breath with minimal-moderate exertion, and he had a chronic cough that is worse when he lies down. She said the claimant has chronic pain in his low back. She said that the claimant's emotional factors do not contribute to the severity of his symptoms and functional limitations. She said that the claimant's experience of pain or other symptoms were occasionally severe enough to interfere with attention and concentration needed to perform even simple work tasks. She said that the claimant was capable of low stress jobs. She said that the claimant could walk one city block without rest or severe pain, could sit for one hour at one time, and could stand for 30 minutes at one time. She said that the claimant could sit for at least six of eight hours, and could stand/walk for about four of eight hours. She said that the claimant needed a job that permitted shifting positions at will from sitting, standing, or walking. She said that the claimant has postural and environmental limitations. She said that the claimant would have good days and bad days, and would miss about three days per month as a result of his impairments. The undersigned does not find this opinion persuasive, as it is not consistent with nor supported by the mostly mild to occasionally moderate physical examination findings of record. Again, Dr. Richardson seems to give limitations based upon the claimant's subjective complaints rather than the objective evidence of record. Moreover, Dr. Richardson gives limitations that do not appear to be supported durationally such as neck limitations presumably from the claimant's subjective allegations for experiencing neck pain for four days prior to his appointment (Ex. B21F). This opinion is not persuasive. The claimant does have a

> reported history of neck pain, but seemingly more acute relating to gland/stone/surgery issue prior to last ALJ decision B2F. Dr. Richardson also indicates back pain, but there is not much in the treatment records regarding this other than being assessed with low back pain at Ex. B21F, p. 9. However, the claimant made no significant allegations of physical impairments at the hearing beyond the respiratory impairments. Dr. Richardson's statement is not persuasive. The claimant did have knee surgery and some issues with infection following that, but the State agency reviewing medical consultant opinions are more persuasive than Dr. Richardson's statements because the finding of additional limitations is not supported.

(Docket No. 15-2 at ECF pp. 26-27).

Sawyer S. first takes issue with the ALJ basing so much of his evaluation on how the opinion "seemed" to be based on subjective complaints. Sawyer S. argues that this is not relying on appropriate factors, like supportability or consistency, but rather on the ALJ guessing that perhaps the primary care provider relied on something other than just the medical records. But discounting a medical opinion because it relied too much on a claimant's subjective complaints that are not otherwise supported by the evidence is permissible. *See Britt v. Berryhill*, 889 F.3d 422, 426-27 (7th Cir. 2018) ("An ALJ can give less than controlling weight to medical opinions based on subjective reports and can even reject a doctor's opinion entirely if it appears based on a claimant's exaggerated subjective allegations."). Sawyer S. also argues that the ALJ failed to acknowledge the parts of Dr. Richardson's opinion that aligned with the RFC and the state-agency physicians' findings. But, the regulations specifically provide for a source-level articulation and not how the ALJ considered each medical opinion from one medical source individually. 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."). Moreover, to the extent portions of Dr. Richardson's opinion did align with the state-agency physician's opinions, to which the ALJ found "persuasive," his decision indicates that.

15

(Docket No. 15-2 at ECF p. 27) ("[T]he State agency reviewing medical consultant opinions are more persuasive than Dr. Richardson's statements because the finding of *additional limitations* is not supported.") (emphasis added). On this record it was not necessary for the ALJ to recontact Dr. Richardson. *See Brenda S. v. Kijakazi*, 2021 WL 3749048, at *5 (S.D. Ind. Aug. 25, 2021).

### 2. Subjective Symptom Analysis

Next, Sawyer S. argues that the ALJ erred in his assessment of his credibility concerning the severity of his physical impairments. The Commissioner responds that the ALJ provided several reasons for his subjective symptom analysis, including Sawyer S.'s daily activities, so even if he did not discuss all Sawyer S.'s limitations, the analysis was not patently wrong. Moreover, the Commissioner argues that the ALJ did not mischaracterize Sawyer S.'s daily living activities.

In assessing a claimant's subjective symptoms, the ALJ must first decide, based on objective medical evidence, whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Then the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which he is limited in performing work-related activities. 20 C.F.R. § 404.1529(c). Under this latter step, the ALJ must consider objective medical evidence and "other evidence," which includes statements made by the individual, 20 C.F.R. § 404.1529(c)(2), as well as the following: daily activities; location, duration, and frequency of symptoms; precipitating and aggravating factors; medications; other treatments; other measures taken for relief; and other factors concerning functional limitations. 20 C.F.R. § 404.1529(c)(3). In determining the extent to which the claimant's symptoms affect his capacity to perform basic work activities, the ALJ must consider whether the subjective symptoms "can reasonably be accepted as consistent with

16

the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). The ALJ concludes by factoring this symptom analysis into the RFC determination. *See* 20 C.F.R. § 404.1545(a)(3).

In addition to the text of the relevant regulations, the Seventh Circuit has spoken directly on symptom evaluations conducted by ALJs. In *Cole v. Colvin*, the Seventh Circuit observed that SSR 16-3p, the SSA's revised interpretive guidelines,

> [M]eant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by claimants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.

831 F.3d 411, 412 (7th Cir. 2016). The Seventh Circuit was careful, however, to clarify that a claimant's statements about the intensity, persistence, and limiting effects of his symptoms "may not be disregarded solely because they are not substantiated by objective medical evidence." *Id. at 416* (citation omitted). Consequently, an ALJ, while he cannot judge a claimant's character, may assess the veracity of a claimant's subjective assertions of pain.

Moreover, in reviewing subjective accounts of a claimant's symptoms, a reviewing court will not overturn an ALJ's decision to discredit such testimony unless the decision is "patently wrong." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). A decision is patently wrong when it lacks explanation and relies on inferences that are not based on specific factual findings that are supported by the evidence. *Id.*

Here, in explaining the RFC assessment, the ALJ wrote:

> The record shows that the claimant received treatment for his impairments throughout the period of adjudication. The record shows mostly mild to occasionally moderate physical examination findings, including a successful knee arthroscopy, and decreased breath sounds/wheezing in his lung. The record shows that the

> claimant is able to prepare simple meals, pick up toys, do the laundry do the mowing, wash the dishes, drive, control his finances, have hobbies, live with his family, and get along with others. This evidence leads the undersigned to believe that the claimant's impairments are not as severe as he alleged.

(Docket No. 15-2 at ECF p. 25). Sawyer S. argues that this analysis is patently wrong because the claims are not actually supported by what Sawyer S. reported he was able to do at the hearing. As the Commissioner argues, Sawyer S. takes issue with the ALJ's reliance on his daily activities, but he has not taken any issue with respect to the other factors the ALJ considered, including his physical examination and the state-agency physician findings. The Commissioner is correct that not every reason for the subjective symptom analysis need be perfect to escape the "patently wrong" standard, so long as enough of them are. However, the Commissioner also concedes that the ALJ "did not include some of the limitations plaintiff sometimes reported." (Docket No. 28 at ECF p. 17). While the Court does not find that the ALJ equated Sawyer S.'s daily activities to his ability to complete a full-time job, which is impermissible, the Court does find that the ALJ did not discuss some of the qualifications as to how Sawyer S. was limited in completing these activities of daily living, which the ALJ can consider on remand.

## VI. CONCLUSION

For all these reasons, the Magistrate Judge recommends that the Court **REMANDS** the ALJ's opinion pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure

to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

  **SO RECOMMENDED** the 13th day of June, 2022.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.